BRIDGEPORT ELECTRIC & ICE CO. v. MEADER.

(Circuit Court of Appeals, Fifth Circuit. May 21, 1895.)

No. 358.

SALE—CONSTRUCTION OF CONTRACT—LIEN FOR PURCHASE PRICE—JUDGMENT LIEN—JUDGMENT AFFIRMED BY DIVIDED COURT.

Appeal from the Circuit Court of the United States for the Northern District of Alabama.

This was a bill by A. B. Meader, trustee of the Blymyer Ice Machine Company, a corporation of Ohio, against the Bridgeport Electric & Ice Company, an Alabama corporation, to compel defendant to give a mortgage, pursuant to the terms of a contract, for a balance due upon the purchase price of an ice machine sold to defendant by the Blymyer Ice Machine Company; and, in case such mortgage was not given, to declare and establish a lien and have

the same foreclosed. The circuit court entered a decree for complainant, from which defendant has taken this appeal. The facts were in substance as follows: On May 7, 1891, a contract was made between the Blymyer Ice Machine Company and one A. L. Soulard for the sale of an ice machine. The defendant corporation was not then organized, nor was it organized until September of the same year. Soulard, however, was one of its promoters, and afterwards became its president, and he signed the contract by his own name "for Bridgeport Electric & Ice Co." The stipulated price of the machine was $23,200, to be paid as follows: "$5,750 on arrival at Bridgeport, Ala., of the machine (of not less than three car loads); $5,750 when the machine is in successful working order and has stood a fifteen days test, which test shall be considered successful only in the event that the machine shall produce thirty thousand pounds of good merchantable ice per day for fifteen days, said machinery then to be accepted by the party of the second part; the remainder in negotiable notes with interest at 6 per cent. per annum from date of delivery, to be secured by mortgage on the machine, buildings, and real estate on which the machine is erected, or with personal indorsement satisfactory to the party of the first part, payable as follows: one for $5,850 at four months, and one for $5,850 at eight months." The ice machine was put in according to the contract, and, after a test, was accepted in April, 1892, and the purchase money was paid, excepting deferred payments amounting to $10,950. On October 10, 1892, a resolution was passed by the directors of the defendant company to provide for this balance by giving five promissory notes of $2,190 each, payable in three, five, seven, nine, and eleven months, respectively, to be secured by $12,500 of 6 per cent. mortgage bonds of defendant company, being part of a proposed issue of $25,000 in bonds. In the meantime the Blymyer Ice Machine Company had made an assignment for the benefit of creditors; and the assignees having resigned their trust, the complainant, A. B. Meader, was appointed trustee. The notes thus authorized were received by complainant, but the bonds to secure them were never delivered, nor was the personal security contemplated by the original contract ever given.

The bill was filed on January 27, 1893, and in it complainant alleged that he accepted the notes just referred to upon the express condition that the mortgage bonds to secure their payment should be delivered to him on or before November 5, 1892, and that on December 14, 1892 he notified defendant that he refused to accept the notes. In the bill itself the notes were tendered back to defendant. The bill further alleged that defendant company now proposes to issue $25,000 of bonds, to be secured by a first mortgage upon its entire property, and to give complainant $12,500 of such bonds as security, but that complainant declined to receive the same, and that the issuance of such bonds, secured as stated, would be in violation of defendant's contract with the Blymyer Ice Machine Company, whereby a first mortgage was agreed to be given to it. The prayer of the bill was as follows: "And your orator prays that said defendant be required to execute to it a first mortgage upon its said plant as of the date when the balance of purchase price of said ice-making machine was due, and, in the event of failure to execute said mortgage, that your orator be decreed to have a lien for the said balance, with interest thereon, upon the said plant prior to all others, and that said plant be sold under the order and decree of this court for the payment of said balance due, as aforesaid, for the said ice-making machine. And your orator further prays an injunction restraining and enjoining the defendant from incumbering its said property with any mortgage or other lien or incumbrance whereby the mortgage hereby claimed in favor of your orator may be in any wise impaired, defeated, hindered, or delayed. And your orator further prays for such other and further relief as the equities of the case may entitle him to."

Pursuant to the prayer of the bill, a restraining order was granted to prevent defendant from executing the bonds and mortgage, and was continued, from time to time, as a preliminary injunction. On the 28th of January, 1893, the day after filing the bill, complainant also filed, on the law side of the court, a complaint for the recovery of the balance due under the contract, and on April 26, 1893, a judgment was obtained by consent. Afterwards, a supplemental bill was filed in this suit, averring the recovery of the judgment and alleging that a certificate thereof had been filed in the office of the probate

judge of Jackson county, Ala., whereby complainant acquired a lien upon the defendant's property.

On March 18, 1893, a bill was filed in the state chancery court of Jackson county by the Bridgeport Land & Improvement Company against the defendant, the Bridgeport Electric & Ice Company, praying the appointment of a receiver, and a receiver was accordingly appointed by that court. Subsequently, Meader obtained leave of the state court to enforce his judgment at law by execution, notwithstanding the existence of the receivership. An execution sale was accordingly had, but, on application to the supreme court of Alabama for a writ of mandamus, that court ordered the sale to be vacated and annulled. Such further proceedings were had in the present cause that on December 18, 1894, a final decree was entered, by which it was declared, among other things, "that the complainant is entitled to a lien for the balance that is due him, as shown by the judgment, copy of which is made an exhibit to the supplemental bill in the case, upon the property, real and personal, hereinafter particularly described. Said liens relate back to and commence from the date when the original contract was made, on May 7, 1891." The decree ordered that, in case the amount of the indebtedness, as shown by the judgment, with interests and costs, was not paid within 30 days from enrollment of the decree, the property should be sold. From this decree the present appeal was taken by the Bridgeport Electric & Ice Company, with the following assignment of errors: "(1) The court erred in deciding and decreeing that the said complainant has a lien on the said property described in the said decree. (2) In holding that the contract signed by Soulard was an equitable mortgage on the property described in the decree. (3) In holding and decreeing that the complainant was entitled to relief, and in not dismissing the bill. (4) In not holding and deciding that the complainant had abandoned the contract sought to be enforced in this suit. (5) In not deciding that the complainant had waived his right, if he had any, to enforce said contract. (6) In not holding that the said bill was one for the specific performance of a contract, or that the said contract was so uncertain that it could not be enforced. (7) In not decreeing that the defendant have leave instead of giving a lien or mortgage to give 'satisfactory security.' (8) In holding that an agreement to give a mortgage made by the alleged agent of an intended corporation was binding on the corporation when formed, before its stockholders had authorized it or ratified it at a meeting called for that purpose. (9) In holding that the contract sued on was a contract that bound the defendant as a valid mortgage."

D. D. Shelby and W. L. Martin, for appellant.
Milton Humes, for appellee.

Before PARDEE and McCORMICK, Circuit Judges.

BRUCE, District Judge, sat on the argument, but finding that in the course of the case in the circuit court he had from time to time made important orders, recused himself. The other judges divided in opinion. The decree appealed from is affirmed.